IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| GREGORY PALM, | * |
|     Plaintiff, | * |
| vs. | *   CASE NO. 3:24-cv-47 (CDL) |
| CORRCARE, INC., *et al.*, | * |
|     Defendants. | * |

O R D E R

Gregory Palm spent several months as a pretrial detainee in both the Jones and Baldwin County jails. Palm alleges that he experienced pain in his eyes and problems with his vision, but the jail officials charged with his medical care deliberately allowed his eye problems to fester in an effort to avoid the financial costs of providing him with treatment. Palm asserts that because of the denied and delayed treatment, he suffered permanent vision loss in both eyes and is now legally blind. Palm brings claims against both counties and their respective jail officials, contending that they violated his constitutional right to be free from deliberate indifference to his medical needs as a pretrial detainee. Those government defendants moved to dismiss Palm's complaint for failure to state a claim against them. For the reasons explained below, the Court grants the motions (ECF Nos. 22 & 23) as to Jones County and Defendants Reese and Massee in their

official capacities and denies the motions as to Baldwin County and Defendants Reese, Massee, Moody, Skinner, Hart, Adams, and Glenn in their individual capacities.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL BACKGROUND

Palm alleges the following facts in support of his claims. The Court must accept these allegations as true for purposes of the pending motion.

On April 23, 2022, Gregory Palm was arrested and booked into the Jones County jail. Unable to make bail, he remained in custody there for the next several months. In July, Palm began complaining to the Jones County jail staff about redness and pain in his eyes, as well as issues with his vision. He submitted approximately ten medical requests and four grievances requesting medical treatment for those problems. The Jones County jail staff did not arrange for Palm to be seen by a doctor until October 20. When Palm finally did see a doctor, the doctor prescribed eye drops and "recommended that he be seen by an eye specialist as soon as possible." Am. Compl. ¶ 21, ECF No. 15.[1]

After the doctor's visit, the Jones County jail staff gave Palm ear drops rather than the prescribed eye drops, a mistake that was not corrected until two days later. The ear drops caused Palm "unbearable pain in his eyes and severe migraine headaches," and on October 22 he submitted a grievance complaining that he was going blind because of the ear drops and asking to see an eye doctor. *Id*. ¶¶ 22-24. But Jones County jail administrator Shane Moody, Jones County jail shift commanders Lieutenant Hart and Lieutenant Skinner, along with Jones County Sheriff Butch Reese, decided not to send Palm to an eye doctor because they wanted to

---

[1] In support of their Motions to Dismiss, Defendants point to medical records which they contend show that Palm's doctors recommended treatment different than what Palm alleges. At the motion to dismiss stage, however, the Court may not consider materials outside the pleadings unless they are undisputed—which the medical records are not.

3

avoid paying the cost of a specialist. Instead, they decided to transfer Palm to Baldwin County jail "so that he would become someone else's problem." *Id.* ¶ 27. Baldwin County Sheriff Bill Massee or a Baldwin County jail administrator approved the transfer. Palm does not know whether Baldwin County officials knew about his eye condition before the transfer.

When he arrived at Baldwin County jail on October 24, 2022, Palm told the booking officer that he needed to "be taken to an eye doctor immediately because his eyesight was getting progressively worse," and that he had been referred to an eye specialist by the doctor he saw in Jones County. *Id.* ¶ 30. Four days later, on October 28, Palm submitted a grievance, again complaining about his eye problems and demanding to see an eye doctor. A jail medical provider employed by Defendant CorrCare, Inc., saw Palm on November 1, and Palm was sent directly to the emergency room at Navicent Baldwin Hospital. The emergency room doctors referred Palm to an eye specialist. Baldwin County jail officials, including Sheriff Massee, jail administrator Robert Adams, and jail shift commander Tameka Glenn, "were aware of [Palm's] eye problems and repeated requests to see a specialist" but decided to return him to the jail without further treatment instead of arranging for him to see an eye specialist. *Id.* ¶ 34.

After Palm returned to the Baldwin County jail from Navicent, he filed sick call requests on November 5 and 7 and a grievance on

4

November 7.  Palm was eventually seen on November 8 by Dr. Paul Buczynsky, an agent of CorrCare who Palm alleges was also Baldwin County jail's "medical director."  *Id.*  ¶ 58.  Although Palm insisted that his vision was almost gone, Buczynsky told him that his condition would eventually clear up and that it was not necessary for him to see an eye specialist.  Palm alleges that Buczynsky's "desire to avoid financial responsibility for specialist care" motivated his decision not to send Palm to an eye doctor.  *Id.* ¶ 61.  Palm's condition did not clear up, however, and on December 20 he was taken to an eye specialist in Athens, Georgia, where he was scheduled to return three days later to be evaluated for potential surgery.  Instead of taking Palm to Athens for that evaluation on December 23, Massee, Adams, and Glenn decided to release him from jail on December 22.  *Id.* at ¶ 38.  Palm alleges that this decision was motivated by the Defendants' "intent not to pay for treatment."  *Id.*

Shortly after his release, Palm made his own arrangements to return to the eye specialist in Athens, who referred him to Emory.  Ultimately, Palm "lost 100% of the vision in one eye and 50% from the other," rendering him "legally blind."  *Id.* ¶ 40.  Palm alleges he is "suffering from irreversible blindness secondary to uveitic glaucoma," and that his condition "could have been prevented with timely medical treatment."  *Id.* ¶ 41.

5

DISCUSSION

Palm asserts claims under 42 U.S.C. § 1983 against the following Defendants: Jones County, Sheriff Butch Reese in his individual and official capacities, Baldwin County, Sheriff Bill Massee in his individual and official capacities, Captain Shane Moody in his individual capacity, Lieutenant Skinner in his individual capacity, Lieutenant Hart in his individual capacity, Major Robert Adams in his individual capacity, and Lieutenant Tameka Glenn in her individual capacity.[2] Palm contends that each Defendant is liable for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment.[3] The Court will proceed by analyzing Palm's individual capacity claims first, followed by the official capacity claims.

I. **Individual Capacity Claims**

Palm alleges that Defendants Reese, Massee, Moody, Skinner, Hart, Adams, and Glenn are all personally liable in their individual capacities for their deliberate indifference to Palm's serious medical needs. The individual defendants argue that they

---

[2] Palm also asserts professional negligence and § 1983 claims against Buczynsky and CorrCare. Neither party filed a motion to dismiss, so the Court need not evaluate the claims against them.

[3] Palm alleges that he was detained pursuant to his arrest, so his § 1983 claim is under the Fourteenth Amendment as a pretrial detainee rather than under the Eighth Amendment as a prisoner. "Deliberate indifference claims made under the Fourteenth Amendment are held to the same standards as deliberate indifference claims made under the Eighth Amendment." *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1304-05 (11th Cir. 2023).

6

are each entitled to qualified immunity on the claims brought against them.

Qualified immunity "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)). Because Palm does not dispute that the individual defendants were acting within the scope of their discretionary authority when the challenged conduct occurred, he must demonstrate that "qualified immunity is not appropriate" in his case. *Myrick*, 69 F.4th at 1297. To carry this burden, Palm must allege facts which, when viewed in the light most favorable to him, show that (1) the defendants' conduct violated a constitutional right, and (2) that the violated right was clearly established at the time the alleged violation occurred. *Id.*

The Fourteenth Amendment prohibits "deliberate indifference to serious medical needs of" pretrial detainees because it "constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *see Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) ("[T]he Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and

7

unusual punishment, governs pretrial detainees."). It was clearly established by 2022 that a jail official violates the Fourteenth Amendment if he is deliberately indifferent to the serious medical needs of a pretrial detainee by intentionally denying or delaying access to medical care. The Eleventh Circuit has long held that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). Additionally, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see Kuhne v. Fla. Dep't of Corr.*, 618 F. App'x 498, 504-05 (11th Cir. 2015) (finding that a jury question existed as to whether defendants were deliberately indifferent in delaying medical care to plaintiff whose medical condition caused him to go blind in one eye).

To state a § 1983 claim for deliberate indifference, Palm must allege facts demonstrating "(1) [that he had] a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and [Palm's] injury.'" *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). Here, the parties do not dispute that Palm had a serious medical need when he suffered eye pain and progressively worsening vision loss, so the first element is satisfied. *See*

8

*King v. Lawson,* No. 21-14492, 2024 WL 3355179, at *3 (11th Cir. July 10, 2024) ("Of course, the need to treat a serious eye infirmity, let alone blindness is 'so obvious that even a lay person would easily recognize it.'") (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

The individual Defendants do contend, however, that they did not act with deliberate indifference towards Palm's eye problems. To establish that the individual defendants acted with deliberate indifference, Palm "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Goebert*, 510 F.3d at 1327 (alteration in original) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 403-04 (2015)). As to the first element, the Eleventh Circuit recently clarified that "a deliberate-indifference plaintiff must demonstrate that the defendant was actually aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1261 (11th Cir. 2024) (en banc). The individual defendants argue that Palm did not allege they were subjectively aware that their conduct caused a substantial risk of serious harm to him. The Court must consider Palm's allegations against each individual defendant. *See Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each

9

individual Defendant must be judged separately and on the basis of what that person knows.").

### A. The Jones County Individual Defendants

Palm alleges that he submitted multiple medical requests and grievances to the Jones County jail staff, asserting that he had pain in his eyes and problems with his vision. When Palm was finally taken to a doctor on October 20, 2022, the doctor immediately prescribed antibiotic eye drops and recommended that Palm be seen by an eye specialist as soon as possible. Instead, jail staff gave Palm the wrong medication that caused significant pain and additional vision problems. Palm filed another grievance, which stated that he believed he was going blind and needed to see an eye doctor. Palm alleges that Jones County jail officials Moody, Skinner, Hart, and Reese knew about his serious, worsening eye condition but decided to transfer him to another jail instead of getting him additional medical treatment—just to avoid paying for a specialist—and did not provide any medical treatment while the transfer was pending. A reasonable inference from these allegations is that the individual Jones County Defendants were subjectively aware that Palm had a serious, rapidly deteriorating eye condition but intentionally decided on a course of action that at best would delay critical treatment and at worst would deny it. *See Goebert*, 510 F.3d at 1327 ("Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of

fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Thus, Palm sufficiently alleged that Moody, Skinner, Hart, and Reese acted with deliberate indifference toward his serious medical needs. Palm also alleged that his permanent vision loss could have been prevented with timely treatment, so he also sufficiently alleged the causation element of his claim against Moody, Skinner, Hart, and Reese.

Assuming the facts alleged by Plaintiff to be true and construing all reasonable inferences in his favor, the present factual record would support the conclusion that these Defendants violated Palm's clearly established constitutional right as a pretrial detainee to be free from deliberate indifference to his serious medical needs. Therefore, their motion to dismiss is denied.

### B.   The Baldwin County Individual Defendants

Palm alleges that when he was transferred to the Baldwin County jail, jail officials there learned that he had serious eye problems and was losing his vision. He further alleges that after a Baldwin County jail medical provider sent him to the emergency room for treatment, Baldwin County jail officials including Massee, Adams, and Glenn learned that hospital doctors referred Palm to an eye specialist and "were aware of his eye problems and repeated requests to see a specialist" but refused to arrange for

11

Palm to receive treatment from the eye specialist. Am. Compl. ¶ 34. Instead, they delayed treatment for at least a week, until after Palm filed sick requests and a grievance stating that his vision was almost gone. After the CorrCare doctor saw Palm and told him that his condition would clear up, Palm continued to complain for a month and a half that his condition was not getting better. When he was finally taken to an eye specialist on December 20, 2022, the specialist scheduled Palm to be evaluated for possible surgery three days later. At that point, Massee, Adams, and Glenn decided not to provide any medical treatment for Palm and instead released Palm from custody to avoid paying for his treatment. All of these allegations support the inference that the individual Baldwin County Defendants were subjectively aware that Palm had a serious, rapidly deteriorating eye condition but decided to delay and ultimately deny Palm treatment for it. The Court is thus satisfied that Palm sufficiently alleged that Massee, Adams, and Glenn acted with deliberate indifference toward his serious medical needs. Palm also alleged that his permanent vision loss could have been prevented with timely treatment, so he also sufficiently alleged the causation element of his claim against Massee, Adams, and Glenn.

Assuming the facts alleged by Palm to be true and construing all reasonable inferences in his favor, the present factual record would support the conclusion that these Defendants violated his

12

clearly established constitutional right as a pretrial detainee to be free from deliberate indifference to his serious medical needs. Therefore, their motion to dismiss is denied.

## II. Official Capacity Claims

In addition to the individual capacity claims against the individual Defendants, Palm asserts official capacity § 1983 claims against Sheriff Reese and Sheriff Massee, as well as claims against Jones County and Baldwin County.

### A. Claims Against the Sheriffs

Palm's official capacity claims against Reese and Massee are claims against the office of the Sheriff. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Both Reese and Massee argue that they acted as an arm of the State in providing medical care to county jail detainees and so are entitled to immunity under the Eleventh Amendment. The Court agrees.

"Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). "To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need

13

only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State." *Id.* To determine whether a defendant is an "arm of the State," the Court considers "the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* Here, the defendant sheriffs were engaged in the function of providing medical care when Palm alleges that they were deliberately indifferent to his eye problems.

The Eleventh Circuit recently reaffirmed that a county sheriff acts as an arm of the state with respect to the provision of medical care to pretrial detainees. *McDaniel v. S. Corr. Med. LLC*, No. 24-10722, 2024 WL 4471063, at *4 (11th Cir. Oct. 11, 2024) (per curiam) (citing *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1296 (11th Cir. 2023)). Thus, Reese and Massee are entitled to Eleventh Amendment immunity on Palm's official capacity claims against them. Accordingly, the official capacity claims against Reese and Massee are dismissed.

B.  Claims Against the Counties

A county may be liable under § 1983 when its "official policy" causes a constitutional violation. *Monell*, 436 U.S. at 690-91. Although a county's official policy may be established by the acts of a county final policymaker, Palm acknowledges that liability cannot be imputed to a county for acts of a *non-county* policymaker. Here, Palm contends that Sheriffs Reese and Massee were final

14

policymakers for their respective counties. But, as discussed above, Sheriffs Reese and Massee were arms of the State when they made the decisions about Palm's medical treatment. Accordingly, neither county is subject to liability based on the conduct of the Sheriffs. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983.").

Palm contends that even if he cannot state a municipal liability claim against Baldwin County based on the acts of Sheriff Massee, he states a municipal liability claim against Baldwin County based on the acts of Buczynsky. Again, it is well established that a local government cannot be held liable under § 1983 unless its "official policy" causes a constitutional violation. *Monell*, 436 U.S. at 694. Under certain circumstances, municipal liability may be imposed for a single decision of a final policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *see Davis v. City of Apopka*, 78 F.4th 1326, 1352 n.7 (11th Cir. 2023) (referencing the so-called "final policymaker" avenue of municipal liability).

Whether a person has final policymaking authority for purposes of a § 1983 claim is a question of state law. The issue requires an analysis of "the relevant legal materials," including "state and local positive law," "custom or usage having the force

15

of law," and, where a private entity is alleged to act under color of law as a contractor for the government, the contract between that entity and the government. *Viera v. City of Lake Worth*, 853 F. App'x 356, 359 (11th Cir. 2021) (per curiam) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)); *Howell v. Evans*, 922 F.2d 712, 724 (11th Cir. 1991) ("As the party at issue here is a corporation contracting with the state, the relevant 'state law' for policymaking determinations are the contracts between [the corporation], the state, and [the corporation's employees].").

Here, Palm alleges that Buczynsky "had a contract" with Baldwin County "to provide medical care in the Baldwin County Jail." Am. Compl. ¶ 66. Palm further asserts that Buczynsky was the "medical director for the Baldwin County jail," and in that role served as "the policymaker and final decisionmaker with respect to the provision of medical care to inmates in the county's jail." *Id.* ¶ 58.[4] And Palm also contends that Buczynsky, as a final policymaker for Baldwin County, intentionally denied Palm medical care in order to avoid the costs of an eye specialist's treatment. Based on these allegations, the Court finds that Palm adequately alleged that Buczynsky was a final policymaker for

---

[4] Baldwin County summarily argues that it cannot be liable for the acts of a medical contractor, but it did not address Palm's allegation that Baldwin County appointed Buczynsky as the medical director for the jail and that his policies would determine the allocation of medical resources in the jail.

16

Baldwin County with regard to the provision of medical treatment to jail inmates. If the evidence produced during discovery, including the contract between Baldwin County and Buczynsky, does not show that Buczynsky was Baldwin County's final policymaker, then Baldwin County may be entitled to summary judgment on this issue.

## CONCLUSION

For the reasons set forth above, the Court grants the Motions to Dismiss (ECF Nos. 22 & 23) as to Palm's claims against Jones County and his official capacity claims against Reese and Massee. The Court denies the Motions to Dismiss as to Palm's claims against Baldwin County and his individual capacity claims against Reese, Massee, Moody, Skinner, Hart, Adams, and Glenn. Those claims, along with the claims against CorrCare and Buczynsky, remain pending.

IT IS SO ORDERED, this 3rd day of January, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA