IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

GREGORY PALM,                         *

    Plaintiff,                        *

vs.                                   *

                                  CASE NO. 3:24-cv-47 (CDL)

CORRCARE, INC., *et al.*,             *

    Defendants.                       *

                               *

O R D E R

Gregory Palm spent several months as a pretrial detainee in the Jones and Baldwin County jails. Palm contends that he experienced pain in his eyes and problems with his vision, but the jail officials deliberately allowed his eye problems to fester despite his numerous requests for treatment. Palm asserts that because of the denied and delayed treatment, he suffered permanent vision loss in both eyes and is now legally blind. Palm brought claims against both counties and their respective jail officials as well as Baldwin County's contracted medical providers, arguing that they violated his constitutional right to be free from deliberate indifference to his medical needs as a pretrial detainee. The government defendants moved to dismiss Palm's complaint for failure to state a claim against them. The Court previously granted those motions as to Jones County and the Baldwin

and Jones County sheriffs in their official capacities (ECF No. 31).[1]  The remaining Defendants, who were Jones and Baldwin County jailers, now move for summary judgment on Palm's claims.  As discussed below, the Court denies those motions (ECF Nos. 58 & 74).  The Court also dismisses Palm's claim against Baldwin County as abandoned.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

---

[1] Following discovery, Palm amended his complaint to drop his claims against several jail officials, including the Jones and Baldwin County sheriffs (ECF No. 48), and the Court granted the parties' joint motion to dismiss the claims against Baldwin County's contracted medical providers (ECF No. 99).

FACTUAL BACKGROUND

Viewed in the light most favorable to Palm, the record reveals the following facts.

On April 23, 2022, Gregory Palm was arrested and booked into the Jones County jail.  Just prior to his arrest, Palm had 20-20 vision.  Palm Dep. 94:16-21, ECF No. 63.  Two months into his detention, however, Palm began to complain about his eyes.  He submitted multiple typewritten medical requests using the jail's electronic kiosk system, reporting symptoms of eye "itching and burning" and "los[s] of vis[io]n."  Skipper Dep., Medical Requests (June 19-August 22, 2022), ECF No. 62 at 29-30 & 33-35.  Upon a referral by medical staff, Palm was transported to an appointment with an outside medical provider on October 20 by Jones County's jail administrator, Captain Moody, and Lieutenant Skinner, a shift commander. Palm Dep. 204:19-205:10.  Following that appointment, Palm was diagnosed with conjunctivitis and prescribed a medication called "Neomycin-Polymyxin-HC Suspension" which, per the medical provider's notes, was administered by putting "4 drops into affected *ear* . . . [t]hree times a day [for] 7 days."  [Emphasis added by the Court]. Skipper Dep., Consultation Notes (Oct. 20, 2022), ECF No. 62 at 50.

Several days later, a member of jail staff brought Palm his prescribed medication.  Palm administered the drops to his eyes, but they caused a burning sensation.  After being reassured by his

3

cellmate that the burn meant the medication was fighting infection, Palm administered the drops to his eyes two more times before falling asleep.  When Palm woke up, his eyes were "bloodshot red" and one of them was swollen shut.  Palm Dep. 211:3-5.  Palm's cellmate then looked at the dropper bottle and saw that it was labeled "earwax drop remover."  *Id.* at 211:16-17.  Palm's cellmate immediately took Palm to a member of jail staff, who gave Palm liquid tears to flush out his eyes.  Shortly thereafter, Palm was called to Lt. Skinner's office.  Lt. Skinner apologized to Palm and stated that the eardrops were "a terrible mistake."  *Id.* at 212:21-213:12.  Skinner then told Palm that he would "talk[] to Captain Moody" and that they would "try to get [Palm] to the emergency room."  *Id.* at 213:18-20.

 Palm was not taken to the emergency room.  On the same day as his conversation with Skinner, Palm, who was still in "severe pain" because of his eyes, was placed in a police car and transferred to Baldwin County jail at around midnight on October 25.  *Id.* at 213:20-214:15.  Captain Moody approved the decision to release Palm on an OR (own recognizance) bond.  Moody reviewed his jail roster, an activity he does "pretty much daily", and saw that Palm had not made bond despite being detained in Jones County jail for the preceding six months.  Moody Dep. 15:22-23, ECF No. 60.  Because Palm had a hold in Baldwin County for a probation violation, Moody testified that he released Palm so he could "clear

4

up his case" in Baldwin County.  *Id.* at 15:25-16:21.  Moody did not speak with the jail administration in Baldwin County about the transfer, and Palm's medical records, which included information about his eye troubles, were not sent to Baldwin County jail until two days after his arrival.  Daniel Dep., Transmittal Sheet (Oct. 27, 2022), ECF No. 85-2.

After he was booked into Baldwin County jail, Palm was treated by nurses who worked for CorrCare, the jail's contracted medical provider.  Approximately a week later, Palm spoke to Lieutenant Glenn, who was then the jail's assistant administrator.  Palm, who was "crying" and in "severe pain," told Lt. Glenn that the treatment he received from the CorrCare nurses for his eyes was "not working" and that "nothing [was] helping [his] pain."  Palm Dep. 258:23-259:25.  In response, Lt. Glenn told Palm that he had to "deal with" his eye problems, because he was "a liability" and Baldwin County would not "spend[] the money on" his eye treatment. *Id.* at 260:1-10; 265:15-24.  When Lt. Glenn later escorted Palm to his medical appointments inside the jail, she joked with the CorrCare nurses, telling them that there was "nothing wrong" with Palm's eyes and that he was just "putting on."  *Id.* at 261:25-262:10.

On October 31, Palm submitted a medical request through the jail kiosk, complaining that his eyes were not getting any better and stating that he "need[ed] to see medicine real fast."  Daniel

Dep., Medical Request (Oct. 31, 2022, 12:37 PM), ECF No. 85-5. The following day, Dr. Buczynsky, a CorrCare provider, evaluated Palm's eye condition and decided to send him to a local emergency room. The emergency room doctor diagnosed Palm with "[c]hemical conjunctivitis of both eyes: minor," and prescribed him eye ointment. Defs.' Mot. Summ. J. Ex. 2, ER Records 6 (Nov. 1, 2022), ECF No. 74-2. The hospital's discharge instructions recommended that Palm "follow-up with a local eye specialist for a recheck" if his symptoms did not improve. *Id.* at 14. Baldwin County's jail administrator, Major Adams, saw Palm after he returned from the emergency room. When Palm complained to Major Adams about his eyes, Adams responded that there was "nothing wrong" with Palm and that he needed to stop "putting on." Palm Dep. 272:9-273:11.

Palm submitted more medical requests following his emergency room visit, listing symptoms of "migrain[e] head[aches]", "los[s] of vision," and "sensitivity to light." Palm Dep., Medical Requests (Nov. 5-7, 2022), ECF No. 63 at 162-63. Dr. Buczynsky evaluated Palm again on November 8 and this time referred him to a local ophthalmologist. That doctor's office refused to treat inmates, however, so CorrCare providers searched for other specialists in the area. Meanwhile, Palm continued to submit medical requests about eye pain and vision loss, relying on a cellmate to type his messages as his eyesight deteriorated. Palm Dep., Medical Requests (Nov. 8-17, 2022), ECF No. 63 at 164-66.

Around this time, Palm had another interaction with Major Adams, who told Palm that "what happened to [his] eyes" was Jones County's fault. Palm Dep. 274:3-12. When Palm responded that he was Baldwin County's responsibility, Adams stated that Baldwin County was "not going to spend that kind of money to see [Palm's] eyes treated" and that Palm needed to "wait" until he was released to "take care of that." *Id.* at 274:13-18.

In the middle of November, Palm voluntarily went to the hole – a segregated cell - so that he could "cover [his] head up" and "keep [his] eyes from being exposed to light." *Id.* at 165:17-25; 271:13-17. While there, Palm continued "begging and pleading" jail staff for medical treatment. *Id.* at 166:1-17. Major Adams eventually came to visit Palm in the hole because of "all the complaining" Palm was doing. *Id.* at 267:22-25; 269:5-10. In response to Palm's complaints, Major Adams told Palm that he was "a liability" and that Jones County should not have transferred Palm "with [his] eyes in that condition." *Id.* at 268:4-25. Adams reiterated that Baldwin County was "not going to spend no money" on Palm and that Palm should stop giving the jail officials a "hard time" about his medical treatment. *Id.* Lt. Glenn also came to "peep" on Palm while he was in the hole. *Id.* at 261:2-7. When Palm begged Glenn to take him to an eye doctor, she ignored him and walked away. *Id.* at 261:8-14.

Palm did not submit any medical requests through the kiosk between November 18 and December 12.  Palm did, however, submit written grievances to complain about "not receiving proper medical care" and "being neglected and ignored."  *Id.* at 256:6-11.  Although Major Adams was supposed to respond to written grievances, Palm never received any response.  *Id.* at 255:2-12.

On December 13, Palm submitted another medical request through the kiosk, reporting that his eyes "ha[d] not improve[d]" and requesting follow up treatment.  Daniel Dep., Medical Request (Dec. 13, 2022, 7:34 PM), ECF No. 85-13.  At this point, the vision in Palm's right eye was "100 percent gone" and his vision in his left eye was "real poor."  Palm Dep. 169:3-9.  Palm was eventually transported to a local optometrist on December 21, who recommended that Palm be taken to an ophthalmologist immediately.  Palm was then sent to Dr. Patterson, an ophthalmologist in Athens, Georgia, on the same day.  Dr. Patterson diagnosed Palm with glaucoma and scheduled him for a follow-up surgical consult on December 23.  The day before that scheduled appointment, however, Baldwin County released Palm on an OR bond.  It is not clear from the record who made the decision to release Palm.  Having insufficient funds and no means of transportation, Palm was unable to return to Dr. Patterson for treatment until February 14, 2023.  Today, Palm is completely blind in his right eye, and the vision in his left eye never fully recovered.

DISCUSSION

Palm asserts claims under 42 U.S.C. § 1983 against Baldwin County, and Moody, Skinner, Adams, and Glenn in their individual capacities. Palm contends that each Defendant is liable for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment.[2]

## I.    Individual Capacity Claims

Palm argues that Defendants Moody, Skinner, Adams, and Glenn are liable in their individual capacities for their deliberate indifference to Palm's serious medical needs based upon their direct conduct towards Palm and in their supervisory roles. The individual defendants argue that they are each entitled to qualified immunity on the claims against them.

Qualified immunity "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th

---

[2] Palm was detained pursuant to his arrest, so his § 1983 claim is under the Fourteenth Amendment as a pretrial detainee rather than under the Eighth Amendment as a prisoner. "Deliberate indifference claims made under the Fourteenth Amendment are held to the same standards as deliberate indifference claims made under the Eighth Amendment." *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1304-05 (11th Cir. 2023).

Cir. 2007)).  Because Palm does not dispute that the individual defendants were acting within the scope of their discretionary authority when the challenged conduct occurred, he must demonstrate that "qualified immunity is not appropriate" in his case.  *Myrick*, 69 F.4th at 1297.  To carry this burden, Palm must point to facts which, when viewed in the light most favorable to him, show that (1) the defendants' conduct violated a constitutional right, and (2) that the violated right was clearly established at the time the alleged violation occurred.  *Id.*

The Fourteenth Amendment prohibits "deliberate indifference to serious medical needs of" pretrial detainees because it "constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *see Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) ("[T]he Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees[.]").  It was clearly established by 2022 that a jail official violates the Fourteenth Amendment if he is deliberately indifferent to the serious medical needs of a pretrial detainee by intentionally denying or delaying access to medical care.  The Eleventh Circuit has long held that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989).

10

Additionally, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see Kuhne v. Fla. Dep't of Corr.*, 618 F. App'x 498, 504-05 (11th Cir. 2015) (per curiam) (finding that a jury question existed as to whether defendants were deliberately indifferent in delaying medical care to a plaintiff whose medical condition caused him to go blind in one eye).

To state a § 1983 claim for deliberate indifference, Palm must allege facts demonstrating "(1) [that he had] a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and [Palm's] injury.'" *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). At the outset, the Court concludes that Palm created a genuine dispute of fact as to element one, whether he had a serious medical need. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by*, *Hope v. Pelzer*, 536 U.S. 730 (2002)). Alternatively, a serious medical need is determined by whether "a delay in treating the need worsens the condition."

11

*Id.*  "Where the delay results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is considered serious.'"  *Hill*, 40 F.3d at 1188 (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Here, Palm's eye condition ultimately developed into glaucoma, and he suffered permanent vision loss in both eyes as a result.  Blindness is clearly both a "permanent loss" and a "life-long handicap."  *Id.; see also King v. Lawson*, No. 21-14492, 2024 WL 3355179, at *3 (11th Cir. July 10, 2024) (recognizing that "the need to treat a serious eye infirmity, let alone blindness is 'so obvious that even a lay person would easily recognize' it") (quoting *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019)).  As discussed below, Palm also pointed to evidence that his blindness was the result of a delay in his medical treatment.  *See* Kammer Expert Report, ECF No. 86-6 at 6 ("[T]he eight-month delay in treatment was directly responsible for Mr. Palm's irreversible loss of vision and chronic eye pain.").  Thus, a reasonable jury could conclude that Palm suffered from a serious medical need while he was detained in both the Jones and Baldwin County jails.

A.   Deliberate Indifference

To establish that the individual defendants acted with deliberate indifference, Palm "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of

that risk; (3) by conduct that is more than [gross] negligence." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (alteration in original) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam), *abrogated on other grounds by*, *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).  As to the first element, the Eleventh Circuit has clarified that "a deliberate-indifference plaintiff must demonstrate that the defendant was actually aware that his own conduct caused a substantial risk of serious harm to the plaintiff."  *Wade v. McDade*, 106 F.4th 1251, 1261 (11th Cir. 2024) (en banc).  The individual defendants argue that Palm did not point to evidence that they were subjectively aware that their conduct caused a substantial risk of serious harm to him.  The Court must consider Palm's claims against each individual defendant separately.  *See Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual Defendant must be judged separately and on the basis of what that person knows.").

### 1.   Jones County Jailers

Captain Moody knew that Palm had an eye infection, since he transported Palm to his October 20 medical appointment.  Captain Moody argues, however, that he had no knowledge of Palm's subsequent reaction to the eardrop medication and that he only released Palm so that Palm could clear up his case in Baldwin County.  A reasonable jury could infer on the present record that Moody had knowledge of Palm's severe adverse reaction: Moody

13

checked his jail roster daily during the six months of Palm's detention, yet he decided to release Palm hours after Lt. Skinner stated he would speak with Moody about Palm's emergency medical problem and did not notify anyone in Baldwin County about the transfer. *See Goebert*, 510 F.3d at 1327 ("Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Viewing this evidence in the light most favorable to Palm, a jury could find that Captain Moody transferred Palm to Baldwin County to avoid responsibility for his serious medical condition.

Lt. Skinner also had knowledge of Palm's eye problems. Like Captain Moody, he transported Palm to his October 20 medical appointment, and he witnessed Palm's adverse reaction to the eardrop medication. Although Palm pointed to no direct evidence that Skinner made the decision to transfer him to Baldwin County, a jury could infer under the circumstances that Skinner participated with Moody in making that decision: Skinner told Palm that he would arrange with Moody to have Palm transported to the emergency room, and Palm was instead transferred to Baldwin County within the day. Drawing all inferences in Palm's favor, a jury could find that Skinner, like Moody, had authority to arrange for Palm's transportation to the emergency room but instead agreed

14

with Moody to send Palm to another jail to avoid responsibility for Palm's adverse reaction to the eardrops.

By transferring Palm to another jail in lieu of providing him with emergency care while he was suffering from an adverse reaction that left him in severe pain with one eye swollen shut, a reasonable jury could find that both Captain Moody and Lt. Skinner disregarded the risk of Palm's serious eye condition by conduct that was more than gross negligence. A jury could thus conclude that Moody and Skinner were deliberately indifferent to Palm's medical needs, and Defendants' motion for summary judgment on this ground is denied.

### 2.   Baldwin County Jailers

When Palm was transferred to the Baldwin County jail, he received medical treatment from CorrCare providers and was eventually sent to the emergency room, where he was diagnosed with minor conjunctivitis. Palm continued to complain about his eyes following the emergency room visit, however, so Dr. Buczynsky recommended that Palm see an eye specialist in early November. For the next month, Palm spoke face to face with both Adams and Glenn about his eye pain and deteriorating vision. At that point, Major Adams told Palm that Baldwin County wasn't going to pay for a specialist's treatment and that Palm should stop giving jail officials a hard time about his eyes. Lt. Glenn, on the other hand, simply ignored Palm and walked away when he pleaded for an

15

eye doctor. The record thus establishes that Major Adams and Lt. Glenn knew in November that Palm had serious eye issues, but they took no action for approximately a month while Palm's eyesight deteriorated.

While Defendants argue that any delay in Palm's treatment was the result of CorrCare's difficulty in finding an eye specialist that would treat Palm, this argument merely creates a fact dispute in light of the significant evidence that Adams and Glenn refused to arrange for Palm's eye treatment because they did not want to pay for it. A jury could infer on the present record that both Adams and Glenn contributed to the month-long delay in Palm's seeing an eye specialist, because they made it clear to Palm that he should stop complaining and that Baldwin County wasn't going to pay for a specialist's treatment. Thus, a reasonable jury could find that Adams and Glenn were deliberately indifferent to Palm's serious eye condition, and their motion for summary judgment on that ground is denied.[3]

B.   Causation

"The final requirement for a deliberate indifference claim is that a defendant have a causal connection to the constitutional

---

[3] The Baldwin jailers argue that Palm abandoned his claim for an award of punitive damages against them. The Court finds that Palm pointed to facts from which a jury could conclude that Defendants engaged in the sort of reckless or callous conduct warranting an award of punitive damages, so the Court refuses to grant summary judgment to Defendants on that issue.

16

harm." *Goebert*, 510 F.3d at 1327. "Causation, of course, can be shown by personal participation in the constitutional violation." *Id.* Where, as here, a pretrial detainee argues that his injury was caused by a delay in treatment, he "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) (footnote omitted), *overruled in part on other grounds by*, *Hope v. Pelzer*, 536 U.S. 730 (2002).

Defendants argue that Palm did not sufficiently link their actions to a delay in Palm's treatment that caused his injury. But as discussed above, Palm pointed to evidence that the Jones County jailers' decision to transfer Palm rather than send him to the emergency room and the Baldwin County jailers' refusal to send Palm to an eye specialist caused a delay in treatment for his serious medical condition. Palm also pointed to evidence that this delay contributed to his ultimate blindness. *See* Young Expert Report 4, ECF No. 86-4 ("A cascade of failures and delayed care occurred that impacted Mr. Palm's medical care, causing permanent damage" to his eyes); Kammer Expert Report, ECF No. 86-6 at 6 ("[T]he eight-month delay in treatment was directly responsible for Mr. Palm's irreversible loss of vision and chronic eye pain."). Thus, Palm pointed to evidence from which a

17

reasonable jury could find that Defendants' deliberate indifference in delaying Palm's treatment caused his injury.

Finding that a genuine factual dispute exists as to each element of Palm's deliberate indifference claims, the Court concludes that Defendants are not entitled to qualified immunity on those claims, and their motions for summary judgment are denied.[4]

## II.  Claim Against Baldwin County

Count two of Palm's second amended complaint asserts a deliberate indifference claim against Baldwin County for decisions made by Dr. Buczynsky as the county's final policymaker with respect to medical care in the county jail.  Baldwin County moved for summary judgment on Palm's deliberate indifference claim against it, arguing that Buczynsky did not act as a final policymaker for Baldwin County.  Palm did not respond to Baldwin County's motion, so his claim against Baldwin County is deemed abandoned. *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Accordingly, that claim is dismissed.[5]

---

[4] Finding a genuine dispute of material fact as to whether the individual capacity Defendants are liable for their personal involvement in denying Palm his constitutional rights, the Court need not consider at this time Palm's argument that those Defendants are also liable in their roles as supervisors.

[5] Baldwin County asks the Court to certify the dismissal of any claims against it as final under Federal Rule of Civil Procedure 54(b), which

CONCLUSION

For the reasons set forth above, the Court denies the motions for summary judgment as to Palm's claims against Moody, Skinner, Adams, and Glenn in their individual capacities (ECF Nos. 58 & 74). The Court also dismisses Palm's claim against Baldwin County as abandoned, and the Clerk is accordingly instructed to terminate Baldwin County's summary judgment motion (ECF No. 75). Further, the claims against the defendant medical providers were dismissed, so the Clerk is instructed to terminate the summary judgment motion filed by those Defendants (ECF No. 57). This action will be tried during the Court's May 2026 trial term.

IT IS SO ORDERED, this 6th day of March, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

permits the Court to direct entry of a final judgment "as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Rule 54(b) certifications are reserved for "unusual" cases and apply under circumstances which occur "rarely." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997) (per curiam) (quoting *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981)). The Court does not find that such circumstances are present here, so it will not grant Baldwin County's request for certification.

19